UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK ARELLANO,<br><br>    Plaintiff,<br><br>    v.<br><br>CHAD HASKINS and FREDERICK MARTINEZ,<br><br>    Defendants. | No. 1:17-cv-01235-NONE-JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 46) |

    Plaintiff Erik Arellano ("plaintiff"), proceeding *pro se*, filed this lawsuit against Bakersfield police officers Chad Haskins and Frederick Martinez (collectively, "defendants"), asserting a claim of excessive use of force in violation of the Fourth Amendment to the U.S. Constitution. Presently before the court is defendants' motion for summary judgment. (Doc. No. 46.) Plaintiff has opposed the motion[1] and defendants have replied. (Doc. Nos. 53, 54.) Pursuant to Local Rule 230(g) and General Order No. 617, the court has taken this matter under submission on the papers without holding a hearing. For the reasons set forth below, defendants' motion will be granted.

/////

---

[1] The court issued a *Rand* notice to plaintiff on January 13, 2020, explaining the requirements for opposing the motion for summary judgment. (Doc. No. 47.)

1

# BACKGROUND

## A. Factual Background

### 1. Undisputed Events Leading to Defendants' Use of Force

The undisputed evidence before the court on summary judgment is as follows. On January 14, 2016, Officers Martinez and Damian Romero observed a 1994 green two-door Mercury Cougar approach a posted stop sign at an intersection, but the driver, later identified as plaintiff, failed to come to a complete stop before the limit line. (Doc. No. 46-3 ¶¶ 5–6.) Officers Martinez and Romero attempted to pull plaintiff over for the traffic violation and plaintiff pulled his vehicle into a Dollar General parking lot but then drove away from the officers. (*Id.* ¶¶ 7–8.) Officer Romero activated the patrol vehicle siren, but plaintiff continued to drive away. (*Id.* ¶ 9.) Officer Martinez observed plaintiff put on the hood of his sweatshirt, put both hands in the air, and then make a movement as if he was reaching for an unknown object in the area of the front passenger seat, before displaying gang signs at the officers. (*Id.* ¶ 10.)

Plaintiff led multiple police officers, including both of the defendant officers, in a vehicle pursuit lasting approximately two hours, during which time he drove through red lights and stop signs, drove in the wrong direction of traffic, and stopped several times before driving away when the officers approached him. (*Id.* ¶¶ 11–12; Doc. No. 9 at 3.) Eventually, the officers deployed spike strips under plaintiff's vehicle tires and deflated three of them, but plaintiff continued to drive away from the officers, driving again in the wrong direction of traffic. (Doc. No. 46-3 at ¶¶ 14–15; Doc. No. 9 at 3.) Plaintiff finally stopped his vehicle but blocked traffic in both directions. (Doc. No. 46-3 at ¶ 18.) Multiple officers positioned their patrol vehicles behind plaintiff's vehicle, attempted to conduct a felony car stop, and commanded plaintiff in both English and Spanish to exit his vehicle. (*Id.*)

### 2. Disputed Accounts of Defendants' Use of Force

On the other hand, the facts pertaining to defendants' use of force are disputed by the parties on summary judgment. According to defendants, plaintiff remained inside the vehicle with all the windows rolled up and refused to exit the vehicle or roll down the windows. (*Id.* ¶¶ 18, 20.) According to defendants, plaintiff also manipulated his right hand into the shape of a

2

firearm and pointed his hand at the officers and at his own head. (*Id.* ¶ 19.) Officer Martinez alleges that plaintiff made numerous furtive movements inside the vehicle reaching for unknown objects on top of or under the front passenger seat and even turned on the vehicle's reverse lights which indicated to the officers that plaintiff may attempt to back up and ram into them. (*Id.* ¶¶ 19–20.) About 20 minutes after plaintiff stopped his vehicle, Officer Martinez positioned himself approximately 30 feet away from plaintiff's vehicle with a less-lethal 40 mm projectile launcher and deployed a single projectile at the front passenger vehicle window away from plaintiff towards the windshield, causing the window to shatter. (*Id.* ¶¶ 21–22.)

Officer Haskins next yelled at plaintiff to "exit the vehicle now or [he] will send in the dog and [plaintiff] will be bit." (*Id.* ¶ 23.) However, plaintiff remained in the vehicle and Officer Haskins again yelled, "This is your last warning. Come out with your hands up or you're going to be bit by the K9." (*Id.* ¶ 24.) According to defendants, plaintiff finally exited the vehicle with one hand in the air and one hand mimicking a gun. (*Id.* ¶ 25.) Officers announced over the PA system for plaintiff to get on the ground and Officer Haskins yelled, "Police K9 get on the ground or you're going to get bit." (*Id.* ¶¶ 26–27.) Plaintiff responded by yelling at the officers "shoot me in the head" and pointed his finger toward his temple. (*Id.* ¶ 28.) Officer Martinez deployed another less-lethal 40 mm projectile, which hit plaintiff in the left thigh but appeared to have no effect. (*Id.* ¶ 29.)

Plaintiff turned away from Officer Martinez, refused the officers' commands to surrender, and continued yelling at them. (*Id.* ¶ 30.) Officer Haskins deployed his dog who engaged plaintiff on the lower left leg and took him to the ground. (*Id.* ¶ 30.) Next, Officer Haskins instructed plaintiff to first place his hands in front of him and then he would remove the dog, and plaintiff complied and laid flat on the ground with hands in front of him. (*Id.* ¶¶ 31–32.) Officer Haskins immediately disengaged his dog and the officers were then able to handcuff plaintiff and take him into custody. (*Id.* ¶ 33.) Plaintiff was then transported to the Kern Medical Center for treatment and subsequently transported and booked into the Kern County Jail. (*Id.* ¶¶ 35, 38.)

Plaintiff presents a very different version of these events on summary judgment. He asserts that defendants used the projectile launcher and dog after he had already fully surrendered

3

to them and no longer posed a threat to the officers:

> After a two-hour plus slowspeed chase all throughout numerous residential districts, and light manufacturing areas, Plaintiff did in fact come to a full stop, with three tires blown out by spike strips, and thereafter Plaintiff surrendered, with his hands in the air and eventually laying prone on the ground. However, after a few minutes of deliberation between the two Defendant [sic] named herein they did shoot a rubber bullet projectile into the body of Plaintiff, and thereafter did release the K-9 (dog) unit to attack Plaintiff while he was still in the state of total surrender. The Defendants failed to cease and desist the use of the attack dog for several minutes, and while they watched, the Defendants did observe their K-9 Unit rip, tear and cause great and serious injuries upon the body of Plaintiff herein. After some time passed, the Defendants did interfere with the use of their dog, and arrested Plaintiff.

(Doc. No. 9 at 3; *see also* Doc. No. 53 at 8.)

       3.    <u>KGET News Video</u>

In moving for summary judgment defendants have submitted news video footage that aired on local station KGET, which they claim "clearly shows that the use of force by the Defendant Officers was *before* [plaintiff] was in custody and clearly demonstrates that [plaintiff's] representation of what occurred and when the force was used by the Defendant officers was fabricated." (Ex. D, Doc. No. 46-4 ("KGET News Video"); Doc. No. 46-3 ¶ 51 (emphasis in original).) Plaintiff also relies on the KGET News Video in his opposition to the pending motion, asserting that the footage "depicts the unjustifiable actions carried out by both Defendants . . . as they undoubtedly violated Plaintiff's constitutional rights to be free of 'excessive force' and 'punishment' during the procedure of the arrest." (Doc. No. 53 at 10.) Both parties claim the KGET News Video not only captures the use of force by defendants, but also confirms their version of events. (*See* Doc. No. 46-3 ¶¶ 50–51; Doc. No. 53 at 10.) The court has reviewed this video evidence and finds that the KGET News Video reveals the following sequence of relevant events.

The first part of the video footage captures the vehicle pursuit of plaintiff during which plaintiff's vehicle can be seen slowly weaving out of lanes and driving without his lights on. (KGET News Video at 00.39–1.03). The footage also shows plaintiff driving through a red light on the rims of the vehicle as a result of running over the spike strips. (*Id.* at 1.04–1.08.) The

second part of the KGET News Video captures the events after plaintiff stopped his vehicle, starting with plaintiff slowly opening the driver's side door with his hand sticking out. (*Id.* at 1.08–1.17.) Plaintiff eventually gets out of the car and faces the police officers with both hands raised in the air, but his right hand is manipulated into the shape of a gun and he appears to be yelling at the police officers. (*Id.* at 1.17–1.22.) The footage then cuts to plaintiff turning around and an officer yelling, "Get on the ground, down now," after which the police dog was released and brought plaintiff down by his leg. (*Id.* at 1.23–1.30.) Finally, the relevant footage ends with the police officers moving toward plaintiff who remained on the ground. (*Id.* at 1.30–1.36.)

        4.       <u>State Court Criminal Proceedings</u>

Plaintiff was charged in state court with the following violations: (1) California Vehicle Code § 2800.4 (evading a peace officer by driving in the opposite direction of traffic); (2) California Vehicle Code § 2800.2 (driving recklessly while evading a peace officer); (3) California Penal Code § 30305(a)(1) (possession of ammunition by a person prohibited from owning or possessing a firearm); and (4) California Penal Code § 69 (obstruction or resistance of an officer through the use of threat or violence). (*See* Ex. A, Doc. No. 46-2 at 5.) On January 29, 2016, a preliminary hearing was held in which Officer Martinez testified regarding the events leading to plaintiff's arrest, including plaintiff mimicking a firearm with his hand and pointing it at his own head and at the police officers twice while remaining inside his vehicle after he came to a stop and after he exited the vehicle. (Ex. B, Doc. No. 46-2 at 52, 55.) Following the conclusion of testimony at the preliminary examination, plaintiff's defense counsel raised the following argument challenging the charge of violating California Penal Code § 69:

> Just starting with the PC 69 charge, there's evidence that [plaintiff] evaded law enforcement. But then the evidence is, eventually, once the car is stopped, [plaintiff] was taken into custody. There's no evidence that [plaintiff] would use force or fear once the car was stopped and he was taken into custody. So I think that Count 4 should be discharged.

(*Id.* at 99.) In response to this argument, the prosecuting deputy district attorney stated:

> With regard to the PC 69, I think simulating a firearm, pointing a firearm, real or simulated, to the police, under these circumstances, certainly is an attempt to tell the officers that he's willing to use

5

>>whatever is necessary to prevent them from capturing him. I think for purposes of a prelim, that is sufficient evidence for a holding order on Count 4.

(*Id.* at 107.) The state court ultimately concluded that probable cause in support of the charge of violating California Penal Code § 69 had been established based on the following:

>>And lastly, as to Count 4; namely the violation of Penal Code Section 69, obstructing an executive officer's performance of their duty – I think you had an interesting argument, Mr. Pope [plaintiff's counsel in the state court criminal proceedings]. But I think all of the totality of the facts and the fact that – specific fact that your client made that gesture mimicking a gun, pointing at the officers, that, in conjunction with everything that happened in the case, shows that that crime was committed. And there's sufficient evidence to believe that the defendant's guilty thereof . . . .

(*Id.* at 111.)

On November 18, 2016, a change of plea hearing was held in the state court criminal case and plaintiff pleaded no contest to all charges and enhancements, including the charge of violating California Penal Code § 69. (*See* Ex. C, Doc. No. 46-2 at 124.) The parties agreed and stipulated to a factual basis for the plea "based on the police reports and/or the [preliminary hearing] transcript[.]" (*Id.* at 120.) Plaintiff was subsequently sentenced to a term of imprisonment in state prison of 14 years and 8 months, and is currently incarcerated. (Ex. A, Doc. No. 46-4 at 6.)

**B.      Procedural History**

On September 15, 2017, plaintiff filed his original complaint in this action. (Doc. No. 1.) The assigned magistrate judge issued an order requiring plaintiff to show cause as to why this case should not be dismissed as barred pursuant to the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. No. 3.) Specifically, the magistrate judge explained:

>>To be convicted of a violation of Cal. Penal Code § 69, it must be established that the officer was engaged "in the performance of his duty." Cal. Penal Code § 69. This requires that the officer be engaged in the "lawful" performance of his official duties. *See People v. Simons*, 42 Cal. App. 4th 1100, 1108 (1996). Plaintiff's claim for the use of excessive force implies the arrest was "unlawful" because "it is a public offense for a peace officer to use unreasonable and excessive force in effecting an arrest." *People v. Olguin*, 119 Cal. App. 3d 39, 45 (1981). Thus, a determination that the defendants used excessive force in the course of the arrest would require a finding that the officers were not engaged in the lawful

6

> performance of his duty, and that the conviction under Section 69 is invalid. *See Heck*, 512 U.S. at 487; *see also Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed")[.]
>
> Moreover, because Plaintiff pleaded *nolo contendere* to the charges, he has been found guilty of the charge for purposes of determining whether he may bring a claim against the officers. *Nuno v. County of San Bernardino*, 58 F.Supp.2d 1127, 1135 (C.D. Cal. 1999) ("a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or jury verdict of guilty" when evaluating a *Heck* claim).

(*Id.* at 2–3.)

Plaintiff requested additional time to respond to the order to show cause and to seek representation, and the court ordered plaintiff to file his response to the order by December 1, 2017. (Doc. Nos. 4, 5.) However, plaintiff did not file any response by that deadline and the magistrate judge issued findings and recommendations recommending that this action be dismissed due to plaintiff's failure to comply with the court's order and failure to prosecute this action. (Doc. No. 6.) On December 28, 2017, plaintiff filed objections to those findings and recommendations, requesting that the court "forgive his past lateness" and grant him an extension of time so that a legal assistant could assist him by studying his case. (*See* Doc. No. 7.) The magistrate judge withdrew the findings and recommendations and ordered plaintiff to file an amended complaint including "facts sufficient for the Court to determine whether the action is barred by *Heck v. Humphrey*, 512 U.S. 477, 486 N.6 (1994)." (Doc. No. 8 at 1–2.) On January 24, 2018, plaintiff filed his amended complaint. (Doc. No. 9.)

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be

8

drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–55 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

When a plaintiff proceeds *pro se*, the court should "treat the opposing party's papers more indulgently than the moving party's papers." *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985); *see also Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) (finding that courts may be "much more lenient" with the affidavits and documents of the party opposing summary judgment). In a *pro se* civil rights action, a verified complaint may constitute an opposing affidavit for purposes of summary judgment so long as the allegations are based on a plaintiff's personal knowledge of admissible evidence, and not merely on belief. *See McElyea v. Babbitt*, 833 F.2d 196, 197–98 & n.1 (9th Cir. 1987). If a plaintiff states that the facts in the complaint are true under penalty of perjury, the pleading is "verified." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

Finally, where is video evidence of the incident giving rise to an excessive use of force claim, a court must "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). Nonetheless, even where video evidence exists, the circumstances may be such that a reasonable factfinder could draw divergent conclusions from what the video evidence shows. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132–39 (9th Cir. 2019) (disputed issues of material fact precluded summary judgment in an action alleging excessive use of force even though the evidence included surveillance footage); *Glenn v. Wash. Cty.*, 673 F.3d 864, 878 (9th Cir. 2011) ("The circumstances of this case can be viewed in various ways, and a jury should have the opportunity to assess the reasonableness of the force used after hearing all the evidence.").

/////

# ANALYSIS

Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by a person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). To succeed on a § 1983 claim, plaintiff must demonstrate that the action (1) occurred "under color of state law," and (2) resulted in the deprivation of a constitutional or federal statutory right. *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

## A. Defendants' Request for Judicial Notice

Defendants request that the court take judicial notice of: (1) a copy of the criminal court docket in the underlying state court criminal case of *People v. Arellano*, Kern County Superior Court Case No. BF162809A; (2) a certified copy of the transcript from plaintiff's January 29, 2016 preliminary hearing in the Kern County Superior Court; and (3) a certified copy of the transcript from plaintiff's November 18, 2016 change of plea hearing in the Kern County Superior Court. (*See* Doc. No. 46-2.) Plaintiff has not objected to defendants' request.

A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court may also take judicial notice of matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001). When a court takes judicial notice of a document, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (internal quotation marks and citation omitted). Here, the court will take judicial notice of the documents from the file of the underlying state court criminal prosecution of plaintiff. *See Lininger v. Pfleger*, No. 17-cv-03385, 2017 WL 5128170, at *1 n.1 (N.D. Cal. Nov. 6, 2017) ("The documents submitted for judicial notice are documents filed in Plaintiff's state court criminal proceedings, which are suitable for judicial notice under Fed. R. Evid. 201(b).") (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006)).

**B.     *Heck* Doctrine**

Defendants argue that plaintiff's claim of the excessive use of force against him is barred by the decision in *Heck*, based on his plea of no contest to resisting arrest in violation of California Penal Code § 69. (Doc. No. 46 at 17.) In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed or direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed . . . . But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486–87. "[T]he relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence under [a resisting arrest statute]." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (citing *Heck*, 512 U.S. at 487).

The Ninth Circuit has held that a § 1983 claim for excessive use of force is not barred under *Heck* "where the conviction and the § 1983 claim are based on different actions during 'one continuous transaction.'" *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011). For example, *Heck* does not bar an excessive force claim if the plaintiff alleges that the force used by a police officer was not objectively reasonable in relation to the level of resistance. *Id.* at 1133 (noting that such a claim "does not collaterally attack [plaintiff's] conviction [or] deny that [plaintiff] resisted") (internal citations omitted). However, if a criminal conviction arises out of the same facts and "is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought," then the § 1983 action must be dismissed. *Beets v. Cnty. of L.A.*, 669 F.3d 1038, 1042 (9th Cir. 2012) (internal citations and quotation marks omitted).

/////

California Penal Code § 69 provides:

> Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment.

*Id.* This statute "sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." *In re Manual G.*, 16 Cal. 4th 805, 814 (1997).

"In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer." *Smith*, 394 F.3d at 695 (citing *People v. Curtis*, 70 Cal. 2d 347, 354–56, 357 n.9 (1969); *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401, 1409 (2002)). "If the officer was not performing his or her duties at the time of the arrest, the arrest is unlawful and the arrestee cannot be convicted under a [resisting arrest statute]." *Id.* "Excessive force used by a police officer at the time of the arrest is not within the performance of the officer's duty." *Smith*, 394 F.3d at 695–96 (citing *People v. Olguin*, 119 Cal. App. 3d 39, 45–46 (1981); *People v. White*, 101 Cal. App. 3d 161, 167 (1980)).

Here, the parties agree that plaintiff was convicted pursuant to his no contest plea to resisting arrest in violation of California Penal Code § 69.[2] It is undisputed that the conviction has not been reversed, expunged, declared invalid, or called into question by the issuance of a writ of habeas corpus. Accordingly, defendants argue that plaintiff's excessive force claim in this civil action is *Heck* barred because "Plaintiff undisputedly pled no contest to obstructing/resisting an executive officer in violation of Cal. Penal Code § 69" and that the events surrounding

---

[2] In his opposition brief, plaintiff states that he "pleaded no contest (Not Guilty)" to the California Penal Code § 69 charge. (Doc. No. 53 at 2.) However, under California law, a plea of *nolo contendere* or no contest is "considered the same as a plea of guilty and that, upon a plea of *nolo contendere*, the court shall find the defendant guilty." Cal. Penal Code § 1016(3); *see also Nuño*, 58 F.Supp.2d at 1135 ("[F]or purposes of the *Heck* analysis, a plea of *nolo contendere* in a California criminal action has the same effect as a guilty plea or jury verdict of guilty.").

12

plaintiff's arrest "all occurred prior to and in order to get the Plaintiff into custody because the Plaintiff was actively resisting arrest." (Doc. No. 46-1 at 20, 21.)

In opposition, plaintiff contends that he did not resist arrest and instead surrendered himself to the officers after he stopped the vehicle, thus defendants' use of the projectile launcher and police dog against him were unnecessary and constituted the use of excessive force in violation of his Eighth Amendment rights. (*See* Doc. No. 53 at 14 ("Plaintiff's hands remained in the air even after being struck by the 40 mm launcher, thus such use of the 40 mm launcher was unnecessary."); *see also* Doc. No. 9 at 2–3 (alleging in his verified first amended complaint that the force was used against him "after he no longer posed a threat when he surrendered . . . . with his hands in the air and eventually laying prone on the ground").) The California Supreme Court has held that "*Heck* would bar [plaintiff's] § 1983 claim to 'the extent that [it] alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ *any* force against him at the time [such force was used.]'" *Hooper*, 629 F.3d at 1132 (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885, 898 (2008) (emphasis in original)). Regardless of whether plaintiff's contentions are supported by the KGET News Video, plaintiff's "theory that he was not resisting or posed no reasonable threat of obstruction to the officers, and the officers had no reasonable justification to employ any force against him clearly undermines his conviction under Section 69."[3] *Webb v. City & Cnty. of S.F.*, No. C 11-00476 CRB, 2011 WL 6151605, at *7 (N.D. Cal. Dec. 12, 2011).

Plaintiff also argues that his claim is not *Heck* barred given that he "was charged with Penal Code 69, and later pleaded no contest (Not Guilty), because he allegedly mimicked a firearm with his hand and not because he was resisting."[4] (Doc. No. 53 at 2–3.) However, at his

---

[3] Here, plaintiff's amended complaint serves as an affidavit in opposition to summary judgment because it is based on plaintiff's firsthand personal knowledge of the events surrounding his arrest and he states the facts in the amended complaint are true under penalty of perjury. (*See* Doc. No. 9 at 6.) Plaintiff plainly asserts therein that he fully surrendered to the police officers and did not offer any resistance to arrest. Therefore, even in viewing this evidence in a light most favorable to plaintiff, this assertion renders his claim *Heck* barred.

[4] The KGET News Video does show plaintiff, after exiting the vehicle, raise both hands in the air and manipulate his right hand into the shape of a gun. (*See* KGET News Video at 1.17–1.22.)

preliminary hearing, the state court found that "all of the totality of the facts," including the mimicking of a gun with his hand, "in conjunction with everything that happened in the chase," show that a violation of California Penal Code § 69 was committed and, accordingly, the court ultimately determined probable cause to sustain that charge had been established. (Ex. B, Doc. No. 46-2 at 111.) Furthermore, at his change of plea hearing plaintiff agreed and stipulated, without any restriction or limitation, that the preliminary hearing transcript and the police reports supplied the factual basis for his no contest plea. (*See* Ex. C, Doc. No. 46-2 at 120.) Given that plaintiff agreed and stipulated to a specific factual basis for his plea, he "cannot now pick apart the testimony that forms the factual basis." *Winder v. McMahon*, 345 F. Supp. 3d 1197, 1206 (C.D. Cal. 2018). Because plaintiff's assertion that he did not resist arrest necessarily implicate the validity of his conviction in state court for violating California Penal Code § 69, his excessive use of force claim brought in this action is *Heck* barred. Accordingly, summary judgment must be entered in favor of defendants.[5]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc. No. 46) is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and to close the case.

IT IS SO ORDERED.

Dated:  **March 30, 2021**

_____
UNITED STATES DISTRICT JUDGE

---

[5] Because plaintiff's § 1983 excessive force claim is *Heck* barred, the court need not reach the issues of whether defendants' use of force was reasonable under the Fourth Amendment or the question of whether the defendants are entitled to summary judgment on qualified immunity grounds.